UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 25-03054-KK-SPx** | Date: | February 18, 2026 |
|---|---|---|---|

Title:    *Araceli L. Hernandez v. Pacific Mountain Logistics, LLC et al.*

Present: The Honorable    KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Dominique Carr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    (In Chambers) Order DENYING Plaintiff's Motion to Remand [Dkt. 13]**

## I.
## INTRODUCTION

On February 14, 2025, Araceli L. Hernandez ("Plaintiff") filed the operative Complaint in San Bernardino County Superior Court against her former employer, Pacific Mountain Logistics, LLC ("Defendant").  ECF Docket No. ("Dkt.") 1-1, Complaint ("Compl.").  The Complaint alleges violations of California Labor Code §§ 201, 202, 203, 226, 226.7, 510, 512, 1194, and 1197, and the California Business and Professions Code § 17200, et seq. ("Unfair Competition Law").  Id. ¶¶ 15-26.

On November 14, 2025, Defendant filed a Notice of Removal with this Court asserting diversity jurisdiction.  Dkt. 1 at 3, Notice of Removal ("NOR").  On December 10, 2025, Plaintiff filed the instant Motion to Remand and Request for $5,000 Sanctions ("Motion").  Dkt. 13, Motion ("Mot.").

The Court finds this matter appropriate for resolution without oral argument.  See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  For the reasons set forth below, Plaintiff's Motion to Remand and Request for Sanctions are **DENIED**.

///

///

## II.
## BACKGROUND

**A.    RELEVANT FACTS**

The Complaint alleges the following relevant facts:

Plaintiff, "on behalf of herself and other members of the general public similarly situated," brings claims under California Labor Code and the Unfair Competition Law.  Compl. ¶¶ 40-170.  Class members are defined as "current, former, and/or future employees of Defendant as direct employees as well as temporary employees employed through temp agencies who work as hourly non-exempt employees."  Id. at 3.  Plaintiff seeks the following damages:

> [U]npaid wages and interest thereon for failure to pay wages for all hours worked at minimum wage and all overtime hours worked at the overtime rate of pay; failure to pay overtime wages at the proper overtime rate of pay; failure to authorize or permit all legally required and/or compliant meal periods or pay meal period premium wages; failure to authorize or permit all legally required and/or compliant rest periods or pay rest period premium wages; statutory penalties for failure to provide accurate wage statements; statutory waiting time penalties in the form of continuation wages for failure to timely pay employees all wages due upon separation of employment; injunctive relief and other equitable relief; reasonable attorneys' fees pursuant to Labor Code sections 218.5, 226(e) and 1194; costs; and interest brought on behalf of Plaintiff and others similarly situated.

Compl. ¶ 1-3.


**B.    PROCEDURAL HISTORY**

On February 14, 2025, Plaintiff filed the operative Complaint against Defendant in San Bernardino County Superior Court.  Id.  On October 22, 2025, the case was consolidated with a separate Private Attorneys General Act (PAGA) action in San Bernardino County Superior Court "based on the same facts alleged in the class action complaint."  Dkt. 17, Opposition ("Opp.") at 7.

On November 14, 2025, Defendant removed the instant action to this Court based on original diversity jurisdiction.  NOR at 3.

On December 10, 2025, Plaintiff filed the instant Motion, arguing Defendant's removal was not timely and Defendant failed to satisfy both the diversity and amount in controversy requirements.  Mot. at 2-3.

On January 8, 2026, Defendant filed the Opposition, arguing removal was timely and its presumed violation rate for estimated damages was reasonable.  Opp. at 8-14.

On January 15, 2026, Plaintiff filed a Reply.  Dkt. 18, Reply at 5.

This matter, thus, stands submitted.

## III.
## LEGAL STANDARD

Under 28 U.S.C. § 1441(a), a civil action may be removed from state to federal court if the action is one over which federal courts could exercise original jurisdiction. When removing a case under diversity jurisdiction, the defendant must establish (1) complete diversity among the parties, and (2) an amount in controversy over $75,000. 28 U.S.C. § 1332; see also Chavez v. JPMorgan Chase & Co., 888 F.3d 413, 415 (9th Cir. 2018). "A defendant seeking removal has the burden to establish that removal is proper and any doubt is resolved against removability." Luther v. Countrywide Home Loans Servicing LP, 533 F.3d 1031, 1034 (9th Cir. 2008); see also Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (holding the removal statute is "strictly construe[d] . . . against removal jurisdiction").

## IV.
## DISCUSSION

**A.     DEFENDANT HAS COMPLIED WITH THE PROCEDURAL REQUIREMENTS FOR REMOVAL UNDER 28 U.S.C. § 1446.**

### 1.     Applicable Law

Pursuant to 28 U.S.C. § 1446(b)(1), a defendant must file the notice of removal within 30 days after being served with a complaint alleging a basis for removal. Alternatively, if the basis for removal is not clear on the face of the complaint, "a notice of removal may be filed within 30 days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). The 30-day "removal clock does not start until a paper makes a ground for removal 'unequivocally clear and certain.'" Dietrich v. Boeing Co., 14 F.4th 1089, 1091 (9th Cir. 2021). "[N]otice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry." Harris v. Bankers Life & Cas. Co., 425 F.3d 689, 694 (9th Cir. 2005). While a defendant must "apply a reasonable amount of intelligence in ascertaining removability," they "need not make extrapolations or engage in guesswork." Kuxhausen v. BMW Fin. Servs. NA LLC, 707 F.3d 1136, 1140 (9th Cir. 2013) (citation modified).

If neither 30-day deadline under 28 U.S.C. § 1446(b) applies, a defendant may "remove outside the two thirty-day periods on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines." Roth v. CHA Hollywood Med. Ctr., L.P., 720 F.3d 1121, 1125 (9th Cir. 2013). In any event, under 28 U.S.C. § 1446(c)(1), removal based on diversity jurisdiction is limited to one year after commencement of the action, unless the plaintiff has acted in bad faith.

### 2.     Analysis

Here, the Court finds Defendant's Notice of Removal was timely. The Complaint is indeterminate on its face as to removability based on diversity jurisdiction, as it neither alleges Plaintiff's citizenship nor asserts a specific monetary figure. Compl. ¶¶ 2-3. Thus, it was not

---

"unequivocally clear and certain" from the Complaint that Defendant had grounds for removal based on diversity jurisdiction, <u>Dietrich</u>, 14 F.4th at 1095, and the 30-day removal clock did not start when Defendant was served the Complaint.[1]  The Court also finds no basis to conclude the alternate 30-day removal clock was triggered by any paper making grounds for removal "unequivocally clear and certain."

Instead, Defendant, learned of the facts supporting removal "on the basis of its own information" obtained through investigation.  <u>Roth</u>, 720 F.3d at 1125.  Thus, Defendant was permitted to file a Notice of Removal outside the 30-day periods.  <u>Id.</u> (holding a defendant may remove outside the two thirty-day periods "on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines.").

Accordingly, the Notice was timely and complies with the procedural requirements for removal pursuant to 28 U.S.C. § 1446.[2]

## B.    DEFENDANT HAS MET ITS BURDEN FOR SATISFYING THE DIVERSITY OF CITIZENSHIP REQUIREMENT

### 1.    Applicable Law

Under 28 U.S.C. § 1332(a), a federal district court has original jurisdiction over a civil action where the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties.  Complete diversity requires each plaintiff to be of a different citizenship than each defendant.  <u>Grancare, LLC v. Thrower ex rel. Mills</u>, 889 F.3d 543, 548 (9th Cir. 2018) (citing <u>Caterpillar Inc. v. Lewis</u>, 519 U.S. 61, 68 (1996)).  An individual is a citizen of the state where they are domiciled.  <u>See</u> <u>Kantor v. Wellesley Galleries, Ltd.</u>, 704 F.2d 1088, 1090 (9th Cir. 1983).  A corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business.  28 U.S.C. § 1332(c)(1).

### 2.    Analysis

In its Notice of Removal, Defendant properly establishes complete diversity.  Defendant designates Plaintiff as a California citizen because the Complaint states she is a resident of California.  <u>Id.</u> at 3.  "For purposes of removal based on diversity of citizenship, a plaintiff's state of residence is

---

[1] Defendant does not specify whether its investigation into and subsequent discovery of Plaintiff's citizenship occurred within 30 days of its Notice of Removal.  Nonetheless, "even if a defendant could have discovered grounds for removability through investigation, it does not lose the right to remove because it did not conduct such an investigation and then file a notice of removal within thirty days of receiving the indeterminate document."  <u>Roth</u>, 720 F.3d at 1125.

[2] Though Plaintiff argues Defendant's seven-month delay and the existence of employer data render removal untimely, that is not the relevant standard.  <u>See</u> <u>Dietrich</u>, 14 F.4th at 1091 ("'[The 30-day] removal clock does not start until a paper makes a ground for removal 'unequivocally clear and certain.'").  Plaintiff also argues the consolidation of the class action and aforementioned PAGA case "was merely a ruse to cover [Defendant's] delay in seeking removal in the first place."  Dkt. 13-1 at 12.  The procedural requirements for removal are satisfied with regard only to the present pleadings, obviating need for analysis of Defendant's motives.

presumptively considered to be their state of citizenship." Covarrubias v. Ford Motor Co., No. CV 25-00328-JLS-MAAx, 2025 WL 907544, at *3 (C.D. Cal. Mar. 24, 2025) (citing Bradley Min. Co. v. Boice, 194 F.2d 80, 85 (9th Cir. 1951)).  On the other hand, Defendant "is a limited liability company with two members, both of whom are individuals/natural persons who are citizens of Idaho.  [Defendant] is therefore a citizen of Idaho."  NOR at 3.

Therefore, there is complete diversity between the parties.  28 U.S.C. § 1332.

## C.    DEFENDANT HAS MET ITS BURDEN FOR SATISFYING THE AMOUNT IN CONTROVERSY REQUIREMENT

### 1.    Applicable Law

To determine the amount in controversy, "courts first look to the complaint" and generally find the "sum claimed by the plaintiff controls if the claim is apparently made in good faith."  Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015) (citation modified).  "[T]he amount in controversy includes damages (compensatory, punitive, or otherwise), the costs of complying with an injunction, and attorneys' fees awarded under fee-shifting statutes or contract."  Fritsch v. Swift Transp. Co. of Ariz., LLC, 899 F.3d 785, 793 (9th Cir. 2018).  However, the amount in controversy is reduced if "a rule of law or measure of damages limits the amount of damages recoverable."  Morris v. Hotel Riviera, Inc., 704 F.2d 1113, 1115 (9th Cir. 1983).

Where the amount in controversy is unclear or ambiguous from the face of the state-court complaint, "[a] defendant's amount in controversy allegation is normally accepted . . . unless it is 'contested by the plaintiff or questioned by the court.'"  Jauregui v. Roadrunner Transp. Servs., Inc., 28 F.4th 989, 992 (9th Cir. 2022) (quoting Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 87 (2014)).  In such cases, the defendant seeking removal must prove the amount in controversy by a preponderance of the evidence.  Lowdermilk v. U.S. Bank Nat'l Ass'n, 479 F.3d 994, 998 (9th Cir. 2007).  Parties may submit evidence, "including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'"  Ibarra, 775 F.3d at 1197 (citation modified).  "A defendant may rely on reasonable assumptions to prove that it has met the statutory threshold," Harris v. KM Indus., Inc., 980 F.3d 694, 701 (9th Cir. 2020), and can map a "'chain of reasoning that includes assumptions' to calculate the amount in controversy," Rosenwald v. Kimberly-Clark Corp., 152 F.4th 1167, 1176 (9th Cir. 2025) (quoting Perez v. Rose Hills Co., 131 F.4th 804, 808 (9th Cir. 2025)).  "[A]ssumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'"  Arias v. Residence Inn by Marriott, 936 F.3d 920, 927 (9th Cir. 2019) (quoting Ibarra, 775 F.3d at 1199).  However, "a defendant cannot establish removal jurisdiction by mere speculation and conjecture."  Ibarra, 775 F.3d at 1197.

In cases involving alleged violations of the California Labor Code and Unfair Competition Law, courts have considered payroll information and declarations from business professionals.  See, e.g., Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc., No. CV 19-0839-DOC-SPx, 2019 WL 7987117, at *3 (C.D. Cal. June 21, 2019).  Where a complaint "provides little information about the frequency with which Defendant allegedly violated California labor laws, Defendant may reasonably choose to estimate the frequency of violations when calculating the amount in controversy."  Id. at *5 (citing Ritenour v. Carrington Mortg. Servs. LLC, 228 F. Supp. 3d 1025, 1029 (C.D. Cal. 2017)).

Standard multiplication of hours worked, hourly rates, and number of workweeks in the applicable period serve as sound bases for assessing the amount in controversy.  See Leyva v. Medline Indus. Inc., 716 F.3d 510, 514 (9th Cir. 2013) (stating "damages [can] feasibly and efficiently be calculated" by multiplying hourly rates by estimate off-the-clock work hours).

### 2. Analysis

Here, Defendant has met its burden of establishing the requisite amount in controversy by a preponderance of the evidence.  As an initial matter, because Plaintiff does not claim a sum in the Complaint,[3] Defendant relies on "evidence, assumptions, and arguments" to satisfy its burden. Jauregui, 28 F.4th at 991.

Defendant estimates the amount in controversy based on "several calculations, derived from [Defendant's] records of [Plaintiff's] employment."  NOR at 6.  Defendant first determined Plaintiff worked 923 of the 1,353 past days between the start of the class period and her last day of employment.  Id.  Next, using Plaintiff's time records, Defendant calculated she worked 8 hours or more on 868 of those 923 days, and calculated her pay throughout the operative period.  Id. Defendant then "assumed one violation [of each alleged violations] occurred each day based on [Plaintiff's] allegation that violations were the result of [Defendant's] 'policies, practices, and/or procedures' that were generally applicable to her.'"  Id. at 7 (quoting Compl. ¶¶ 15, 20, 26, 31, 35, 37).[4]  Defendant also assumes "Plaintiff worked 30 minutes unpaid each day if she worked more than 5 hours, due to her allegation that she was forced to clock out during meal periods but remained 'on duty,' and assumed 10 minutes of unpaid work for every day due to allegations of unpaid pre-shift training and post-shift security checks."  Opp. at 16-17.  Defendant argues the applicable violation rates are at least 60 percent, if not 100 percent.  Id. at 21-23; dkt. 17-1 at 15.

Plaintiff argues the 60 percent and 100 percent violation rates are "unreliable and speculative."  Reply at 5.  Plaintiff also asserts she "neither pled for herself or the class that every single workday, every single shift or every single pay period a violation of each and every possible Labor Code violation occurred."  Id. at 9.  However, Plaintiff does not plead occasional or sporadic violations, but rather, alleges violations occurred as a result of Defendant's "policies, practices, and procedures."  Compl. ¶¶ 15, 44, 62, 70, 152, 160, 168.  Plaintiff specifies these policies, practices, and procedures to include:

> (a) Requiring Plaintiff and similarly situated employees to come in prior to start of shift and work off-the-clock participating in training without being paid for that time;
> (b) Requiring Plaintiff and similarly situated employees to clock out for meal breaks and remain on duty without being paid for that time; and

---

[3] The Complaint neither alleges nor estimates "how much time [Plaintiff] spent performing off-the-clock tasks," thus providing no figures from which Defendant could calculate the amount in controversy.  NOR at 5.

[4] Defendant excluded "(i) days on which she did not record any work time on her punch records, and (ii) all holidays and/or other non-working days, based on [Plaintiff's] time punch records."  NOR at 7.

(c) Requiring Plaintiff and similarly situated employees to undergo off-the-clock
security check after clocking out for the end of shift without being paid for that time.

Id. ¶ 15.

Based upon these allegations, Defendant's estimate of a 60% to 100% violation rate
regarding Plaintiff's claims that class members worked without regular pay, overtime pay, meal
periods or meal period premiums, rest periods or rest period premium wages, and failed to receive
both accurate wage and hour statements as well as wages upon separation is reasonable.  Id.; Opp. at
10-13; see also Zepeda v. Mastec Network Sols., LLC, No. CV 18-00749-VAP-SHKx, 2018 WL
3222749, at *4-6 (C.D. Cal. June 29, 2018) (noting absence of qualifying words supports acceptance
of an assumed 100 percent violation rate); Harris, 980 F.3d at 701 ("The preponderance standard
does not require a district court to perform a detailed mathematical calculation of the amount in
controversy before determining whether the defendant has satisfied its burden").

Plaintiff's estimated damages, based upon a violation rate of 60%, are as follows:

| Amounts in Controversy | Estimated Damages |
| --- | --- |
| Minimum wage damages[5] | $5,358.95 |
| Liquidated damages[6] | $5,358.95 |
| Overtime damages[7] | $3,472.28 |
| Meal period premium damages[8] | $10,766.97 |
| Rest period premium damages[9] | $10,923.06 |
| Itemized statement penalties[10] | $1,850.00 |
| Waiting time penalties[11] | $5,186.70 |

---

[5] Defendant presents several bases for its estimate, see dkt. 17-1 at 3; NOR at 7; Compl. ¶¶
15, 24, 54; Opp. at 12, and stated "reasonable assumptions to prove that it has met the statutory
threshold," Harris, 980 F.3d at 701.

[6] As Defendant reasonably calculated minimum wage damages, the liquidated damages are
accordingly presumed reasonable.

[7] Defendant relies on several reasonable sources for its estimate, see NOR at 8; Compl. ¶¶ 7,
53, and reasonably calculated overtime damages.

[8] Defendant's formula supports a reasonable estimate of meal period premium damages.  See
NOR at 8; Compl. ¶¶ 24, 27, 54.

[9] Defendant reasonably calculated rest period damages.  See NOR at 9; Compl. ¶¶ 31,70.

[10] This figure is the same regardless of the violation rate applied and relies on reasonable
assumptions.  See dkt. 17-1 at 15; Opp. at 17; Compl. ¶¶ 150-52; cf. Garibay v. Archstone
Communities LLC, No. CV 12-10640-PA-VBK, 2013 WL 12157241, at *4 (C.D. Cal. Feb. 4, 2013)
(finding the defendants failed to provide any "evidence to support the assertion that all class
members would be entitled to damages for violations for every single pay period"), aff'd, 539 F.
App'x 763 (9th Cir. 2013).  Further, "Plaintiff does not dispute the valuation [Defendant] placed on
eligible wage statement penalties under Labor Code § 226."  Reply at 9.

[11] Defendant reasonably estimated waiting time penalties.  See NOR at 9-10; Compl. ¶¶ 160-
66.  Further, "Plaintiff does not dispute the valuation [Defendant] placed on . . . 'waiting time
penalties' as calculated under Labor Code § 203."  Reply at 9.

| PAGA penalties[12] | $11,672.50 |
|---|---|
| Attorneys' fees[13] | $35,375 |
| **Total Amount in Controversy** | **$89,964.51** |

\*    \*    \*

Accordingly, the Court finds Defendant has shown by a preponderance of the evidence that the amount in controversy exceeds $75,000. Defendant relies on records of Plaintiff's actual pay during the operative period, dkt. 17-2, which Plaintiff does not contest. See, e.g., Feao v. UFP Riverside, LLC, No. CV 17-3080-PSG-JPRx, 2017 WL 2836207, at \*5 (C.D. Cal. June 29, 2017) (noting "allegations of a 'uniform policy,' 'systematic scheme[s],' and violations occurring at 'all material times' support the assumption of a 100 percent violation rate"); Noriesta, 2019 WL 7987117, at \*5 (adopting a 100 percent violation rate); cf. Ibarra, 775 F.3d at 1198-99 ("[A] 'pattern and practice' of doing something does not necessarily mean always doing something."). Here, "Plaintiff's allegations contain no qualifying words such as 'often' or 'sometimes' to suggest less than uniform violation that would preclude a 100 percent violation rate." Feao, 2017 WL 2836207, at \*5; see also Compl. ¶¶ 15, 20, 23, 26-28, 31, 33, 35, 37. Defendant has met its burden to show the minimum wage damages, liquidated damages, overtime damages, meal period premium damages, rest period premium damages, penalties, and attorneys' fees at controversy in this action exceed $75,000.

## V.
## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand and Request for Sanctions are **DENIED**.

**IT IS SO ORDERED.**

---

[12] Defendant assumes a PAGA violation for each period and reasonably provides a basis for the calculation; moreover, PAGA penalties are the same regardless of the violation rate. See Opp. at 17-18; dkt. 17-1 at 15; NOR at 10-11. Plaintiff argues the PAGA penalty calculation is "unreliable and contrary to the statute" insofar as Defendant attempts to aggregate civil penalties. Dkt. 13-1 at 17-18. Contrarily, Defendant permissibly calculates Plaintiff's individual recovery under the statute. Opp. at 17-18; see also Pagel v. Dairy Farmers of America, 986 F. Supp. 2d 1151, 1161 (C.D. Cal. 2013) (treating PAGA penalties like any "other payment[] a defendant must make as the result of an adverse judgment"); Proctor v. Helena Agri-Enterprises, LLC, No. CV 19-02834-JLS-NLS, 2019 WL 1923091, at \*2-3 (C.D. Cal. Apr. 30, 2019) (aggregating PAGA penalties for each alleged violation of the California Labor Code).

[13] Defendant reasonably estimated attorneys' fees. See Opp. at 19; dkt. 17-1; NOR at 15; see also Davis v. Staples, Inc., No. CV 13-8937-FMO-PLAx, 2014 WL 29117, at \*3 (C.D. Cal. Jan. 3, 2014) (calculating attorneys' fees based on hours incurred before the date of removal).